CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

DEC 01 2021

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DERRICK WADDELL ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:20-cv-00038 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANTHONY DEEL, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendant. | ) | |

On January 8, 2021, Plaintiff Derrick Waddell Allen ("Allen" or "Plaintiff"), proceeding *pro se*, filed an Amended Complaint in this civil action under 42 U.S.C. §§ 1983 and 1985 against Defendant Anthony Deel ("Deel") and First Defense Security and Investigations, Inc. ("First Defense"),[1] alleging violations of his constitutional rights under the Fourteenth Amendment of the United States Constitution. *See generally* Am. Compl. (ECF No. 17). On March 23, 2021, the court entered an order dismissing Plaintiff's § 1985 claims against First Defense, leaving Deel as the sole defendant. (ECF. No. 34.) The court subsequently granted partial summary judgment in Deel's favor as to Allen's Fourteenth Amendment claims relating to alleged fabrication of evidence on September 8, 2021. (*See* ECF No. 55.) But the court also construed Plaintiff's Amended Complaint liberally as asserting a separate claim for false arrest and/or unlawful seizure under the Fourth Amendment; at oral argument on Deel and First Defense's motion to dismiss, Plaintiff confirmed that he intended make such a claim. (*See id.*)

---

[1] At all relevant times, Deel was an employee of First Defense and was working as a security officer at Cardinal Village, a public housing complex in Danville, Virginia, owned and managed by the Danville Redevelopment and Housing Authority. Deel does not contest that he was a state actor at the time, apparently due to the contractual relationship between the security company and the Housing Authority.

Because Deel did not interpret Allen's *pro se* complaint the same way, he did not address the Fourth Amendment claim in his motion for summary judgment. Given the court's liberal interpretation of Allen's *pro se* pleading, and in fairness to Deel, the court allowed him to file a second motion for summary judgment directed to that issue. (*See* ECF Nos. 48, 55.)

The matter is now before the court on Deel's motion for summary judgment on Plaintiff's Fourth Amendment claim for false arrest and/or unlawful seizure. Deel submitted an accompanying memorandum and affidavit in support of his motion (*see* ECF Nos. 59, 59-1). Plaintiff has submitted a memorandum in opposition that is not supported by an affidavit or any additional evidence. (*See* ECF No. 63.)

After reviewing the record, the court concludes that Plaintiff has failed to satisfy his burden of showing that a genuine dispute of material fact remains in this case and that Deel is entitled to judgment as a matter of law. Accordingly, the court will grant Deel's motion for summary judgment.

**I.**

This suit arose following an encounter between Allen and Deel on the night of September 10, 2018, at the Cardinal Village apartment complex in Danville, Virginia. On the night in question, Deel was patrolling the area with his partner, Alexander Pruitt, when they observed Allen walking on the sidewalk outside one of the apartment units carrying a beer bottle. Cardinal Village had both a curfew in place and a policy prohibiting the consumption of alcohol in common areas at the time. Deel claims he and his partner approached Plaintiff to investigate because it was past curfew at the time; Deel also believed Plaintiff had been drinking because he claims he observed Plaintiff replace the cap on top of an already-open

beer bottle. Allen claims, however, that it was not past curfew at the time, and that Deel in fact opened the beer bottle when he approached him. Pruitt was wearing a body camera, which began recording immediately prior to Deel making contact with Allen and captured the subsequent encounter. The parties do not dispute the recording's accuracy. (*See* ECF No. 59-5 (responding to a request for admission, Allen admitted that "the camcorder footage is in fact an accurate depiction of the events, yet Deel's footage is blocked from review").)

The bodycam footage[2] shows Deel taking the beer bottle from Allen's hands and pouring out its contents. Deel then asked Allen for his identification and informed him that it was "against the law to have an open container of alcohol." (ECF No. 59-6.) Allen responded, "I apologize for that sir, I apologize." (*Id.*) When Allen removed his wallet from his pants pocket to provide his identification to the security guards, Deel contends that a small bag containing a white powdery substance fell on the ground near Allen's feet.[3] Deel can be heard on the recording asking Allen, "What's this that fell out of your pocket?" After a brief examination, Deel and Pruitt agreed that, due to the substance's appearance, the bag appeared to contain cocaine. Deel then seized the bag and conducted a pat-down search of Allen. Subsequently, Deel handcuffed Allen and called the Danville Police Department ("DPD") for assistance. Deel advised the DPD that Allen was intoxicated. (Allen claims he was impaired as a result of taking prescription medication rather than consuming alcohol.) Allen remained

---

[2] The bodycam footage was included with Deel's motion for summary judgment. (ECF No. 59-6.)

[3] Allen maintains that this bag was thrown on the ground by Pruitt in an attempt to fabricate evidence and frame Allen for possession of narcotics. The court dismissed Allen's fabrication-of-evidence claim because he was never charged with possession of narcotics. (*See* Order, Sept. 8, 2021 [ECF No. 55].)

handcuffed for approximately 32 minutes, at which point Deel transferred possession of the small bag and handed Allen over to the DCPD officers.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). Rather, the evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to

determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Deel argues that summary judgment is proper here because Allen has failed to offer any evidence that he lacked the reasonable suspicion to detain and probable cause to arrest Allen as required by the Fourth Amendment. The record confirms Deel's position, and the court will therefore grant his motion for summary judgment.

### A.

Whether the Fourth Amendment has been violated is a question to be determined based on all the circumstances, *Samson v. California*, 547 U.S. 843, 848 (2006), and review of the existence of reasonable suspicion or probable cause involves application of an objective rather than subjective standard. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968).

A brief, investigatory stop of an individual is constitutional "where a police officer observes unusual conduct which leads him reasonably to conclude . . . that criminal activity may be afoot." *Id.* at 20. The officer must possess an objectively reasonable suspicion of criminal activity based on "specific and articulable facts." *Id.* at 21; *United States v. Hernandez-Mendez,* 626 F.3d 203, 207 (4th Cir. 2010). In forming a reasonable suspicion, "officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available." *United States v. Arvizu,* 534 U.S. 266, 274 (2002). Officers may consider the specific conduct of the suspect and the character of the offense

under suspicion. *See Terry,* 392 U.S. at 28. The character of the location and the time at which a person is observed are also relevant factors for an officer to consider in this analysis. *See Brown v. Texas,* 443 U.S. 47, 51–52 (1979); *Illinois v. Wardlow,* 528 U.S. 119, 123–24 (2000). While an officer's reliance on a mere "hunch" is insufficient to justify a stop, *Terry,* 392 U.S. at 27, the likelihood of criminal activity necessary to justify an investigatory detention need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *See United States v. Sokolow,* 490 U.S. 1, 7 (1989); *United States v. McCoy,* 513 F.3d 405, 411 (4th Cir. 2008) ("Whatever the factual context, reasonable suspicion is a less demanding standard than the probable cause standard applied to arrests, falling 'considerably short of satisfying a preponderance of the evidence standard.'" (quoting *Arvizu,* 534 at 274)); *United States v. Bowman,* 884 F.3d 200, 213 (4th Cir. 2018) ("The reasonable suspicion standard is less demanding than the probable cause standard or even the preponderance of evidence standard.").

The Fourth Amendment prohibits unreasonable seizures, including arrests, but a warrantless arrest of an individual—even for a misdemeanor—is lawful if supported by probable cause. *United States v. Humphries,* 372 F.3d 653, 657 (4th Cir. 2004). Thus, the existence of probable cause is an absolute defense to a wrongful arrest claim brought against an officer under 42 U.S.C. § 1983. *See Iacobucci v. Town of Bonneau,* No. 2:18-cv-00152-DCN-BM, 2019 WL 4686433, at *3–4 (D.S.C. Sept. 26, 2019) (noting that an "unlawful seizure claim under § 1983 requires a showing that [the plaintiff] was arrested without probable cause"). Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has

committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 433 U.S. 31, 37 (1979). For purposes of determining whether probable cause existed, "it is irrelevant what crime a suspect is eventually charged with," or whether he is even charged at all. *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). And a defendant's "innocent explanations for his odd behavior cannot eliminate the suspicious facts from the probable cause calculus." *Id.* at 536 (quoting *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009)). Nor does the fact that an officer has relied on mistaken information negate the existence of probable cause so long as it was reasonable for him to rely on the information in the first place. *See Sevigny v. Dicksey*, 846 F.2d 953, 956–57 (4th Cir. 1988) ("At the more specific level here at issue—a warrantless arrest by a police office—the test is whether a police officer acting under the circumstances at issue reasonably could have believed that he had probable cause to arrest . . . . And in assessing the objective reasonableness of any critical misapprehension or ignorance of fact, account must be taken of any practical exigencies that prevented fuller investigation of the facts before the arrest was made."). An arresting officer's subjective intent to base an arrest on an offense lacking probable cause is also irrelevant if the circumstances still objectively justify the arrest; "an arrest is lawful so long as probable cause exists for *some* offense." *Morris v. Noe*, 672 F.3d 1185, 1193 (10th Cir. 2012) (citing *Devenpeck*, 543 U.S. at 153).

In short, the relevant inquiry is whether an objectively reasonable officer, placed in the circumstances, had "reasonable ground for belief of guilt" that was "particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 25, 27–28 (1949). The

reasonableness of the officer's belief of guilt, and therefore the lawfulness of the arrest, "ordinarily depends, in the first instance, on state law." *DeFillippo*, 443 U.S. at 36.

**B.**

Deel submitted an affidavit stating that he stopped Allen, in part, because he observed Plaintiff outside in violation of the complex's curfew policy.[4] (*See* Aff. of Anthony Deel ¶ 6, Sept. 13, 2021 [ECF No. 59-1].) Plaintiff has not submitted any evidence to suggest, let alone establish, that he was not in violation of the curfew policy on the night in question. While violation of Cardinal Village rules alone is insufficient grounds for an investigatory stop, the time at which Deel observed Allen—10:30 p.m.—is a relevant factor to consider in forming reasonable suspicion. *See Brown,* 443 U.S. at 51–52. Deel's affidavit also states that he observed Allen carrying an open container of alcohol and that he watched Allen place a cap on the top of the open bottle before their interaction. (Deel Aff. ¶¶ 7, 10.) Again, Allen did not submit any evidence to contradict Deel's sworn testimony, and in fact, Pruitt's bodycam footage shows that the cap was resting loosely on the top of the bottle and that Deel removed it with ease before pouring it out. (ECF No. 59-6.) Based on this uncontroverted evidence, it was reasonable for Deel to conclude that the container was open when he approached Allen.

Deel confirmed that he believed Plaintiff was intoxicated during his phone conversation with DPD officers. (*See* ECF No. 59 at 5.) Assuming Allen was carrying an open container of alcohol late at night, coupled with his unsteady speech and demeanor as depicted

---

[4] The court assumes, for purposes of this opinion, that Deel was stopped within the meaning of the Fourth Amendment and that the encounter was not consensual.

in the bodycam footage, it was reasonable for Deel to suspect that Allen was intoxicated and had been drinking from the bottle in his possession.[5]

Under Virginia law, "If any person takes a drink of alcoholic beverages . . . in any public place, he is guilty of a class 4 misdemeanor." Va. Code. Ann. § 4.1-308. The same punishment is provided for any person who "is intoxicated in public." Va. Code. Ann. § 18.2-388. Therefore, based on the facts available to him at the time, it was reasonable for Deel to suspect that Allen had "committed, [was] committing, or [was] about to commit an offense." *DeFillippo*, 433 U.S. at 37. Allen has not provided any evidence showing why Deel's suspicion that he had been drinking alcoholic beverages and/or was intoxicated in public was unreasonable. Even if Plaintiff believes he has "offer[ed] a plausible, innocent explanation"—here, that his inebriated state was the result of taking prescription medication to treat cancer—and "suggests that [his] explanation is a reasonable inference a trier of fact could draw[,] . . . this does not negate probable cause," let alone reasonable suspicion. *Sennett*, 667 F.3d at 537. After all, Allen never mentioned his medications to Deel during their encounter, and even if he had, Deel was under no obligation to believe his protestations of innocence. Even assuming Allen had not opened or drank from the bottle in his possession, it was still reasonable, based on the circumstances, for Deel to suspect that Allen was intoxicated or was drinking from the bottle in his hands—both violations of Virginia law that would justify the stop in question and provide probable cause for his arrest. *See DeFillippo*, 443 U.S. at 36; Va. Code. Ann. §§ 4.1-308, 18.2-388.

---

[5] It does not matter if Allen actually *had* been drinking; all that matters is whether it was reasonable for Deel to *suspect* that he had been.

Here, "given that virtually all of the relevant facts are derived from the body-cam video that is in the record, there are no factual issues to be decided." *Sennett*, 667 F.3d at 537. That record establishes factual circumstances that were sufficient to justify Deel's investigatory stop and warrantless arrest of Plaintiff, and Plaintiff has failed to provide sufficient evidence showing otherwise. On this record, there is no genuine dispute of material fact, and Deel is entitled to summary judgment.

## IV.

For the reasons discussed, the court will grant Deel's motion for summary judgment.

The clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 1st day of December, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE